UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ATILA BAYAT,

                Plaintiff,

     v.

ACCENTURE CORPORATION LLC,

            Defendant.

Case No. 3:18-CV-01602 (VAB)

August 2, 2019

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO CONSOLIDATE**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
Tel: (212) 294-6700
Fax: (212) 294-4700

*Attorneys for Defendant*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 3

     A.    The *Bayat* Action ..................................................................... 3

     B.    The *Walker* Action ................................................................... 5

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT ............................................................................................................................ 8

I.     BAYAT AND WALKER DO NOT SATISFY THE REQUIREMENTS FOR CONSOLIDATION UNDER RULE 42(a) .................................................. 8

     A.    The Cases Do Not Present Common Questions Of Law Or Fact ............. 9

     B.    Consolidation Will Not Promote Efficiency Or Reduce Costs ............... 13

     C.    Consolidation Will Unduly Prejudice Accenture ................................... 16

II.     CONSOLIDATION IS BEING SOUGHT FOR AN IMPROPER PURPOSE ......................................................................................................... 17

III.     CONSOLIDATION SHOULD BE DENIED BECAUSE BAYAT IS NOT AN ADEQUATE CLASS REPRESENTATIVE ................................................. 20

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Aerotel, Ltd. v. Verizon Commc'ns Inc.*,
234 F.R.D. 64 (S.D.N.Y. 2005) ............................................................................14

*Almonte v. Coca-Cola Bottling Co. of New York*,
1996 WL 768158 (D. Conn. Dec. 12, 1996).............................8, 13, 14, 15, 16

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)............................................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................19

*Bascom Launder Corp v. Telecoin Corp*,
15 F.R.D. 277 (S.D.N.Y. 1953) ........................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................19

*Burgis v. N.Y.C. Dep't of Sanitation*,
798 F.3d 63 (2d Cir. 2015)................................................................................19

*Burke v. Also Cornerstone*,
2008 WL 3891737 (D. Conn. July 16, 2008) .........................................................21

*Carter v. N.Y.C. Dep't of Corr.*,
7 F. App'x 99 (2d Cir. 2001) ...........................................................................18

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)............................................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
2009 WL 1834351 (S.D.N.Y. June 18, 2009) ......................................................16

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)..............................................................................21

*DeSouza v. Taiman*,
2017 WL 3444672 (D. Conn. Aug. 10, 2017) .....................................................19

*East Tx. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977)............................................................................................20

*EEOC v. Fliedermaus, LLC*,
77 F. Supp. 2d 460 (S.D.N.Y. 1999).................................................................12

# TABLE OF AUTHORITIES
(continued)

Page

*Emerson v. Sentry Life Ins. Co.*,
   2018 WL 4380988 (W.D. Wis. Sept. 14, 2018) ...................................................14

*Falcon v. Philips Elecs. N. Am. Corp.*,
   304 F. App'x. 896 (2d Cir. 2008) ................................................................21, 22

*Flanagan v. N.Y.C. Dep't of Educ.*,
   2016 WL 4198201 (S.D.N.Y. Aug. 4, 2016).......................................12, 13, 15

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990)..........................................................................22

*Hercules, Inc. v. N.L.R.B.*,
   833 F.2d 426 (2d Cir. 1987)..........................................................................12

*Hochberg v. Howlett*,
   1994 WL 9677 (S.D.N.Y. Jan. 10, 1994) .....................................................21

*Hubert v. Dep't of Corr.*,
   2018 WL 1582511 (D. Conn. Mar. 30, 2018) ..........................................7, 8, 9, 17

*In re IMAX Sec. Litig.*,
   272 F.R.D. 138 (S.D.N.Y. 2010) ..................................................................20

*Int'l Prod. Corp. v. Koons*,
   33 F.R.D. 21 (S.D.N.Y. 1963) ........................................................................9

*Jones v. R.R. Donnelley & Sons Co.*,
   541 U.S. 369 (2004)......................................................................................18

*KGK Jewelry LLC v. ESDNetwork*,
   2014 WL 7333291 (S.D.N.Y. Dec. 24, 2014) ..............................7, 8, 9, 13, 14, 16

*Kurczi v. Eli Lilly & Co.*,
   160 F.R.D. 667 (N.D. Ohio 1995) ..................................................................22

*Levias v. Pac. Mar. Ass'n*,
   2010 WL 358499 (W.D. Wash. Jan. 25, 2010).............................................22

*In re Literary Works in Elec. Databases Copyright Litig.*,
   654 F.3d 242 (2d Cir. 2011)..........................................................................21

*Lomotey v. Conn. Dept. of Transp.*,
   2012 WL 642744 (D. Conn. Feb. 28, 2012) .................................................22

# TABLE OF AUTHORITIES
### (continued)

Page

*Lowry v. Eastman Kodak Co.*,
   14 F. App'x 27 (2d Cir. 2001) ............................................................................15

*Malaney v. Elal Israel Airlines*,
   331 F. App'x 772 (2d Cir. 2009) ........................................................................18

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)..................................................................................7

*Microsoft Corp. v. Baker*,
   137 S. Ct. 1702 (2017)........................................................................................22

*Mira v. Kingston*,
   2016 WL 5867448 (S.D.N.Y. Oct. 3, 2016) .......................................................12

*Norman v. Arcs Equities Corp.*,
   72 F.R.D. 502 (S.D.N.Y. 1976) ..........................................................................20

*Rajasekhar v. Envtl. Data Res., Inc.*,
   2019 WL 2743579 (D. Conn. July 1, 2019) ........................................................18

*In re Repetitive Stress Injury Litig.*,
   11 F.3d 368 (2d Cir. 1993)........................................................................7, 8, 9, 12

*Saunders v. N.Y.C. Dep't of Educ.*,
   2008 WL 1957780 (E.D.N.Y. May 2, 2008) .......................................................11

*Schacht v. Javits*,
   53 F.R.D. 321 (S.D.N.Y. 1971) ....................................................................13, 16

*Sidari v. Orleans Cty.*,
   174 F.R.D. 275 (W.D.N.Y. 1996)..................................................................11, 12

*Sutherland v. Touhey*,
   182 F.3d 901 (2d Cir. 1999)................................................................................18

*Tucker v. Arthur Andersen & Co.*,
   73 F.R.D. 316 (S.D.N.Y. 1976) ....................................................................13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................................19, 20

*Webb v. Goord*,
   197 F.R.D. 98 (S.D.N.Y. 2000) ....................................................................10, 11

## TABLE OF AUTHORITIES
(continued)

Page

**Statutes**

29 U.S.C. § 621 ............................................................................................................3

42 U.S.C. § 1981 .........................................................................................................5

42 U.S.C. § 2000e .......................................................................................................3

**Other Authorities**

9 Wright & Miller, Federal Practice & Procedure § 2382 (3d ed.) ...............................8, 17

9 Wright & Miller, Federal Practice & Procedure § 2383 (3d ed.) ...................................13

**Rules**

Fed. R. Civ. P. 16 .......................................................................................................15

Fed. R. Civ. P. 23 .......................................................................................................20

Fed. R. Civ. P. 42 .........................................................................................................7

Defendant Accenture LLP ("Accenture") respectfully submits this Memorandum of Law in Opposition to Plaintiff Atila Bayat's Motion to Consolidate this action with another action pending in this District, captioned *Matthew Walker v. Accenture PLC and Accenture LLP*, No. 3:19-cv-00888 (VAB)[1] (the "*Walker* action").[2]

## PRELIMINARY STATEMENT

Plaintiffs Atila Bayat and Matthew Walker are both former employees of Accenture alleging claims of race discrimination, in the form of preference for South Asian employees in hiring and promotion. This is where the similarities between these actions end. The actions involve different claims: Bayat asserts claims for age discrimination, national origin discrimination, and retaliation, while Walker does not. The actions name different Accenture entities as defendants. And the actions are procedurally at odds: The *Walker* action is a putative class action that was just filed, while the *Bayat* action is a *pro se* individual plaintiff case that has been pending for months and in which discovery is nearly complete. These significant and important differences between the two cases are fatal to the motion to consolidate.

The motion to consolidate should be denied for the following reasons:

*First*, Bayat and Walker cannot satisfy Federal Rule of Civil Procedure 42(a), which requires that the cases to be consolidated present common questions of law or fact, that consolidation promote efficiency or reduce costs, and that consolidation would not unduly prejudice either party. Plaintiff simply cannot meet this burden. Bayat and Walker worked in different offices in different states in different jobs at different times for different supervisors and allegedly experienced different forms of adverse action. The cases also involve different legal

---

[1] A similar Memorandum of Law in Opposition to Plaintiff's Motion to Consolidate is being filed by Accenture's counsel in *Matthew Walker v. Accenture PLC and Accenture LLP*, No. 3:19-cv-00888 (VAB).

[2] References to "*Bayat* Compl." refer to the complaint filed in *Bayat v. Accenture Corporation LLC*, No. 3:18-cv-01602 (VAB) (the "*Bayat* action"), Dkt. 1. References to "*Bayat* Dkt. [ ]" refer to filings in the *Bayat* action.

claims:  While Walker only asserts race discrimination claims, Bayat has also brought individual claims for age discrimination, national origin discrimination, and retaliation.  While both cases do assert race discrimination claims, mere generalized "commonalities" between two race discrimination cases against a multinational corporation are insufficient to justify consolidation. Moreover, consolidating the *Bayat* and *Walker* actions will not promote judicial efficiency given that the *Walker* action was just filed and the *Bayat* action is close to the completion of fact discovery.  Courts frequently recognize that consolidation is improper where, as here, the cases sought to be consolidated are at different stages in the proceeding.  And the unnecessary delay and additional costs resulting from consolidation will significantly prejudice Accenture.

*Second*, consolidation should be denied because it is being sought for an improper purpose—to use an obviously deficient case to circumvent Court-ordered deadlines and engage in procedural gamesmanship.  It appears that the only reason Walker's case was filed here was to provide a purported basis for re-setting the deadlines in *Bayat* so it could be improperly and belatedly converted into a class action.  Walker worked for Accenture in California, and signed an enforceable release upon his resignation from Accenture, which waives his right to bring any discrimination claims.  His failure to mention this release at all in the Complaint is troubling and highlights the gamesmanship occurring here.  Further, it is apparent from the face of Walker's Complaint that the vast majority of his claims are time-barred, and Walker's claims cannot withstand a motion to dismiss, as he has failed to allege *any* facts supporting an inference that Accenture acted with discriminatory motivation.  In reality, Walker resigned because he was having difficulty securing project placements due to his poor performance—not because Accenture engaged in any form of discrimination.

*Third*, consolidation should be denied because Bayat is not an adequate class representative as is required by Federal Rule of Civil Procedure 23(a)(4).  Bayat has a demonstrated history of inattention to his case, lack of diligence in pursuing his claims, and failure to comply with his basic discovery obligations.  If Bayat cannot fulfill his obligations in his own individual case, he cannot reasonably be expected to "fairly and adequately" protect the interests of a putative class.  And Bayat's age discrimination and retaliation claims against Accenture are not shared by the class, placing his interests squarely at odds with the interests of the class he seeks to represent.  Bayat has shown that he is unfit for the weighty responsibility of serving as a class representative, and thus the motion to consolidate should be denied.

## **BACKGROUND**

### A.     The *Bayat* Action

On September 24, 2018, Atila Bayat filed a complaint *pro se* in this Court against Accenture, LLP, Accenture Inc., Accenture LLC, and Accenture Ltd. alleging age discrimination, race discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq*. and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.  See Bayat* Compl.  Bayat worked for Accenture as a Software Engineering Functional Testing Lead from February 2015 to September 2016 in the Hartford, Connecticut office.  *Bayat* Compl. at 12, 16; *id.*, Ex. A at 1, 25.  Bayat alleges that he was passed over for promotion and salary review due to this race, national origin, and age.  *Bayat* Compl. at 2.  Bayat further alleges that, during his employment, he raised concerns to management regarding a preference for placement of foreign employees primarily from India on projects based in the United States.  *Id.* at 15, 19–20.  He also alleges that, after raising these concerns, Accenture retaliated against him by (1) denying him normal salary review; (2) not placing him on projects; (3) preventing him from completing training; and (4) terminating him.  *Id.* at 15–16, 20–21.

Bayat neglects to mention, however, that throughout his employment with Accenture, he failed to find long-term chargeable work despite being routinely proposed to numerous projects. Wagner Decl. ¶¶ 9, 12.  Bayat also regularly received lists of available projects from Human Resources to which to he could propose himself.  *Id.* ¶ 11.  Bayat was notified multiple times by Accenture that his failure to identify long-term chargeable work would result in his separation from Accenture.  *Id.* ¶ 13.  Accenture's Talent Fulfillment Specialist was not successful in finding staffing for Bayat largely due to his repeated performance failures.  *Id.* ¶ 24.  Indeed, during Bayat's brief employment with Accenture, one client requested that he be removed from a project, and another supervisor stated that she would not permit him to be staffed on her available projects due to his performance failures.  *Id.* ¶¶ 15, 22.  On September 7, 2016, Accenture allegedly informed Bayat that he would be terminated in one week unless he found another role within Accenture.  *Bayat* Compl. at 22.  During this meeting, Bayat alleges he lodged complaints regarding perceived employment discrimination at Accenture.  *Id.* at 28.[3]

The Court-ordered deadline for Bayat to amend his pleadings was November 23, 2018. *Bayat* Dkt. 5.  Discovery in the *Bayat* action has been underway since December 2018.  *See id.* Dkt. 21.  Bayat has repeatedly failed to properly respond to and comply with Accenture's discovery requests or make himself available for a deposition, necessitating the Court's intervention.  Smith Decl. ¶¶ 13–16, 20–22, 26.  Before Bayat's deposition could occur, Bayat

---

[3]  On March 21, 2017, Bayat filed a written Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Connecticut Commission on Human Rights and Opportunities ("CCHRO").  Ex. 1.  The CCHRO dismissed Bayat's charge because he did not file before the 180-day time frame expired.  On June 26, 2018, the EEOC issued a dismissal notice, stating that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes" and notifying Bayat of his right to sue under Title VII or the ADEA within 90 days of receipt of the notice.  *See Bayat* Compl. at 7.

filed the instant motion to consolidate and sought to stay all proceedings in his case pending a

decision on the consolidation motion.  *Bayat* Dkt. 38, 39.

B.    **The *Walker* Action**

On June 7, 2019, Matthew Walker filed a class action lawsuit against Accenture PLC and

Accenture LLP alleging race discrimination in violation of the Civil Rights Act of 1866, as

amended, 42 U.S.C. § 1981.  *Walker* Compl.[4]  Walker, a resident of the State of California,

worked for Accenture as an application performance consultant from November 2011 to June

2015 in the San Francisco, California office.  *Id.* ¶ 25.  Walker's Complaint alleges that

Accenture has engaged in a "pattern or practice of discrimination . . . against individuals who are

not of South Asian race," and that from November 2011 through June 2015 Accenture failed to

promote him because of his race.  *Id.* at ¶¶ 15, 26.

Walker also alleges that his employment was terminated in June 2015 for discriminatory

reasons.  *Walker* Compl. ¶ 28.  In fact, Walker resigned from Accenture after a prolonged period

of "bench" status (meaning he was unassigned to any projects) and issues with his job

performance.  Amick Decl. ¶¶ 8-10.  Walker had demonstrated performance issues during his

employment at Accenture.  Multiple individuals noted issues with Walker's lack of technical

skill, poor work product, and unprofessional communication style.  *Id.* ¶ 8.  One client

specifically complained about Walker's performance and requested that he not be staffed on their

projects in the future.  *Id.* ¶ 8.  Moreover, more than one individual commented that Walker was

often not engaged during important meetings, where he was frequently observed using his phone

---

[4]  On June 21, 2019, Walker filed a written Charge of Discrimination with the EEOC alleging that "Accenture
engages in a pattern or practice of discrimination against non-South Asian and non-Indian applicants and
employees."  Ex. 2, at 2.  The EEOC issued Walker a Right to Sue Notice on July 8, 2019, stating that the
EEOC was terminating its processing of the charge because it was unlikely that the EEOC would be able to
complete its administrative processing within 180 days.  Ex. 3, at 1.

rather than paying close attention and taking notes. *Id.* ¶ 8. Walker's performance rating for Fiscal Year 2015 was "Below Expectations." *Id.* ¶ 9. On June 2, 2015, Walker informed Accenture that he had decided to resign. *Id.* ¶ 10.

Walker alleges that he applied to more than twenty positions with Accenture between 2016 and 2019 but was not hired "because of the company's systematic and continuous discriminatory scheme" despite being qualified for the roles. *Walker* Compl. ¶¶ 29–31. Accenture's records show that Walker applied to 34 positions post-resignation. Amick Decl. ¶ 12. Approximately 24 of those positions were ultimately never filled, and at least one of the positions that was filled was filled by a white male. *Id.* ¶ 14. Walker's Complaint omits the fact that he withdrew from consideration for two of the positions. *Id.* ¶ 14. And, despite his self-serving allegations, Walker was not qualified for many of the positions and his prior performance issues at Accenture resulted in him being rejected as a viable candidate for certain positions. *Id.* ¶ 13. For example, for five of the 34 positions for which he applied, he was disqualified due to feedback from his prior supervisors that he was a poor performer. *Id.* ¶ 13. As such, for all of the positions for which Walker applied, there were legitimate business reasons that he was not hired. *Id.* ¶ 15.

Following his resignation, and in exchange for a monetary payment, Walker signed a Separation Agreement with Accenture that included the following release:

> As a material inducement to Accenture to enter into this Agreement and as part of the consideration for the Separation Benefits offered to you, to which you agree you are not otherwise entitled, you hereby forever release, waive and discharge Accenture LLP . . . ("Released Parties") from any and all claims of any nature whatsoever, known or unknown, which you now have, or at any time may have had, against the Released Parties up to and including the date you sign this Agreement ("Claims"). ***This General Release and Waiver of Claims includes, without limitation, any Claims related to your employment, your activities on behalf of Accenture . . . the termination and layoff of your employment, Claims of wrongful discharge . . . Claims of discrimination under the common law or***

> *any federal or state statute (including, without limitation, Title VII of the Civil Rights Act of 1964*, the Americans with Disabilities Act, and the Age Discrimination in Employment Act, all as amended) . . .

Amick Decl. Ex. A at 2 (emphasis added).

On June 21, 2019, Plaintiff filed the instant motion to consolidate the *Walker* action with the *Bayat* action, stating that if consolidation is granted, Bayat would amend his complaint to assert class claims and seek to serve as a class representative going forward. *Walker* Dkt. 14; *Bayat* Dkt. 38.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "To succeed on a motion for consolidation, the moving party must demonstrate that the actions sought to be consolidated are before the same court and contain common questions of law or fact." *Hubert v. Dep't of Corr.*, 2018 WL 1582511, at *3 (D. Conn. Mar. 30, 2018) (Bolden, J.) (citation omitted) (denying motion to consolidate), *reconsideration denied*, 2018 WL 3350334 (D. Conn. July 9, 2018). Even upon such a showing, "a court has broad discretion in determining whether consolidation is appropriate by balancing the economy gained and prejudice to parties." *Id.* (citation omitted). Courts must carefully "balance the interest of judicial convenience against any delay, confusion, or prejudice that might result from such consolidation." *KGK Jewelry LLC v. ESDNetwork*, 2014 WL 7333291, at *2 (S.D.N.Y. Dec. 24, 2014) (citation omitted). Indeed, the Second Circuit has repeatedly instructed that "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993), *on reh'g*, 35 F.3d 637 (2d Cir. 1994); *see also Malcolm v. Nat'l Gypsum*

*Co.*, 995 F.2d 346, 350 (2d Cir. 1993) ("[T]he benefits of efficiency can never be purchased at the cost of fairness").  Thus, even if common questions of law or fact exist, "where confusion and prejudice will result, it is inappropriate for a court to order consolidation." *Almonte v. Coca-Cola Bottling Co. of New York*, 1996 WL 768158, at *2 (D. Conn. Dec. 12, 1996) (citation omitted); *Repetitive Stress Injury Litig.*, 11 F.3d at 373 ("The systemic urge to aggregate litigation must not be allowed to trump [ ] dedication to individual justice" (citation omitted)).

Courts must deny consolidation where a party seeks to consolidate actions for an improper purpose, such as to circumvent procedural rules.  "Consolidation [is] not [ ] proper if a party thereby seeks to circumvent the rules regarding . . . deadlines for amendment as of right[.]" 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2382 (3d ed.); *see Hubert*, 2018 WL 1582511, at *5–6 (denying consolidation where filing of second complaint was an attempt to circumvent dismissal in first case).

## ARGUMENT

## I.   BAYAT AND WALKER DO NOT SATISFY THE REQUIREMENTS FOR CONSOLIDATION UNDER RULE 42(a)

Federal Rule of Civil Procedure 42(a) requires that the cases to be consolidated present common questions of law or fact, that consolidation promote efficiency or reduce costs, and that consolidation would not unduly prejudice either party.  The *Bayat* and *Walker* actions cannot be consolidated because they do not have common questions of law or fact.  And, consolidation is inappropriate because the cases are at significantly different procedural postures, meaning that consolidation will cause significant delay and additional costs, all to the prejudice of Accenture. Therefore, the Court should use its broad discretion to deny consolidation.  *See KGK Jewelry*, 2014 WL 7333291, at *2 ("Even if the [ ] standards of Rule 42 are met, the decision whether to

order consolidation is discretionary with the court," which "must balance the interest of judicial

convenience against any delay, confusion, or prejudice that might result" (citation omitted)).

## A.    The Cases Do Not Present Common Questions Of Law Or Fact

To succeed on a motion for consolidation, Plaintiff must demonstrate that the *Bayat* and

*Walker* actions contain common questions of law or fact.  *See Hubert*, 2018 WL 1582511, at *3.

"The burden is on the party seeking aggregation to show common issues of law or fact; the

burden is not on the party opposing aggregation to show divergences."  *Repetitive Stress Injury*

*Litig.*, 11 F.3d at 374 (2d Cir. 1993).  Plaintiff has not met his burden here.

Plaintiff makes the generalized claim that the *Walker* and *Bayat* actions should be

consolidated because they involve the same legal theories.  Motion to Consolidate ("Mot.") at 9–

10.  But, he fails to mention the separate and unrelated claims that Bayat brings, which are absent

from the *Walker* action:  Walker only brings race discrimination claims under 42 U.S.C. § 1981

(*Walker* Compl. ¶ 4), whereas Bayat brings race discrimination and retaliation claims under Title

VII and age discrimination and retaliation claims under the ADEA (*Bayat* Compl. at 8–9).[5]  In

situations such as this—where one action contains additional, dissimilar claims—courts

commonly deny consolidation.  *See, e.g.*, *KGK Jewelry*, 2014 WL 7333291, at *3 (denying

motion to consolidate and noting "courts generally deny consolidation requests when

consolidation of disparate claims would muddle the issues before the court or trier of fact."); *Int'l*

*Prod. Corp. v. Koons*, 33 F.R.D. 21, 24 (S.D.N.Y. 1963) (denying motion to consolidate where

one action would add "distinct and unrelated questions").  Even the race discrimination claims

present in both cases rest on different legal theories—Walker brings a pattern or practice claim

---

[5]   Walker notes that he plans to amend his complaint to add Title VII discrimination claims, but those claims are not presently before the Court.  *See Walker* Compl. ¶ 4, n.2.

on behalf of a putative class, whereas Bayat brings an individual race discrimination claim.  As Plaintiff concedes, he cannot legally pursue a pattern or practice claim.  Mot. at 6-7, 11.  Thus, while both cases do involve race discrimination claims, those claims rest on entirely different legal theories that are governed by separate bodies of case law and will entail different discovery and evidentiary proof.

Plaintiff's argument that the consolidated amended complaint he intends to file *post-consolidation* will raise identical causes of action turns the entire consolidation question on its head.  Mot. at 10.  The question on this consolidation motion is whether the cases, as currently pled, present common questions of law or fact.  Plaintiff's argument further underscores that rather than the two cases being deserving of consolidation, this motion is simply a vehicle to circumvent the deadline for amended pleadings set by the Court and belatedly convert Bayat's case to a pattern or practice case.

The factual similarities relied upon by Plaintiff are likewise insufficient, because they are superficial.  Plaintiff claims that both he and Walker "worked in a division at issue in the class action suit during the class period," were subject to the same alleged policies that favor South Asian employees, and "suffered the same adverse employment actions at issue in the class action."  Mot. at 9.  But these bare and generalized "commonalities" are insufficient to justify consolidation.  *See Webb v. Goord*, 197 F.R.D. 98, 101 (S.D.N.Y. 2000).  There are no specific allegations of any company-wide policy, and it is not even factually correct that Walker and Bayat suffered the "same adverse employment actions."  Bayat asserts compensation-related claims, but Walker does not.  Walker resigned, while Bayat's employment was involuntarily terminated.  And Walker asserts a post-resignation failure to hire, but Bayat does not.

Plaintiff also fails to address the overwhelming factual *differences* between the two actions—namely that Walker worked at Accenture during a different time period and in an entirely different office and state than Bayat, that Walker and Bayat worked in different positions and reported to different supervisors, and that Accenture will present unique defenses to Walker and Bayat's claims. *Compare Walker* Compl. ¶ 25 (Walker was employed from November 2011 through June 2015 as an application performance consultant, with a home base of San Francisco, California), *with Bayat* Compl. at 5 (Bayat was hired in February 2015 as a Team Lead of Software Engineering in the North American Technology Delivery Center, with a home base of Hartford, Connecticut). And, Bayat's age discrimination and retaliation complaints will not have any factual overlap with Walker's race discrimination claims. *See Saunders v. N.Y.C. Dep't of Educ.*, 2008 WL 1957780, at *1 (E.D.N.Y. May 2, 2008) (denying consolidation where *pro se* plaintiff's action included Title VII discrimination claims, but action she sought to consolidate with did not).

The only factual "similarity" that even arguably exists is that Walker and Bayat allegedly worked in the same business division, a division that "employs approximately 19,000 individuals across the United States." Amick Decl. ¶ 6. That is not enough to justify consolidation. It cannot be the case that every race discrimination case filed against Accenture involving individuals in the same division should be consolidated. *See Sidari v. Orleans Cty.*, 174 F.R.D. 275, 281 (W.D.N.Y. 1996) ("[E]ven if some evidence may be relevant in both cases, that alone, does not warrant consolidation"); *Webb*, 197 F.R.D. at 101 (denying consolidation and finding that there was "no more ground to find common issues of facts or law supporting consolidation with the matter before this Court . . . than there [was] such commonality among the perhaps

hundreds of other similar cases currently pending in federal courts that were brought by prisoners under § 1983 complaining of comparable misconduct based on equally unrelated incidents").

The lack of factual commonalities between these two actions requires denial of the motion to consolidate. *See Repetitive Stress Injury Litig.*, 11 F.3d at 374 (finding consolidation was an abuse of discretion where "plaintiffs [were] employed at different work sites and in different occupations" and their alleged injuries might have different causes); *Hercules, Inc. v. N.L.R.B.*, 833 F.2d 426, 430 (2d Cir. 1987) (denial of consolidation was not an abuse of discretion where employer, union, and type of unfair practice were the same, but the charges arose out of different incidents); *Sidari*, 174 F.R.D. at 281 (denying consolidation of discrimination suits brought by plaintiffs in the same department because discrimination claims "are so dependent upon the specific factual circumstances alleged in each case"); *Mira v. Kingston*, 2016 WL 5867448, at *2 (S.D.N.Y. Oct. 3, 2016) (denying consolidation of actions alleging discrimination "by different individuals over different time periods" and noting that "[t]he fact that [p]laintiff alleges that the discriminatory conduct at each location was of a *similar type* does not constitute a common factual question" (emphasis in original)).

The cases on which Plaintiff relies are inapposite, as their facts are markedly different than those present here.  In *EEOC v. Fliedermaus, LLC*, 77 F. Supp. 2d 460 (S.D.N.Y. 1999), the court found consolidation was appropriate because the two actions involved the same relationship between the parties, the same incidents, and the same legal theories; the "only divergence between the two actions" was the presence of state claims in one action.  *Id*. at 464–66.  And, in *Flanagan v. N.Y.C. Dep't of Educ.*, 2016 WL 4198201 (S.D.N.Y. Aug. 4, 2016), the court consolidated actions that shared "numerous facts that [were] identical," including "many of

the same acts of race discrimination by the same actors at the same school during the same time period." *Id.* at *3–4.  That is not the case here, and consolidation should be denied in this case.

**B.     Consolidation Will Not Promote Efficiency Or Reduce Costs**

As Plaintiff correctly notes, consolidation under Rule 42(a) is intended to promote judicial economy by eliminating "unnecessary repetition and confusion" and "the waste associated with duplicative discovery and multiple trials."  Mot. at 8–9 (internal quotations and citations omitted).  But consolidating the *Bayat* and *Walker* actions will only cause significant delay and additional costs for all parties, without avoiding duplication.  Courts faced with facts such as these routinely refuse to consolidate.  *See, e.g.*, *Tucker v. Arthur Andersen & Co.*, 73 F.R.D. 316, 317 (S.D.N.Y. 1976) (denying motion to consolidate because consolidation would have likely confused the jury, delayed the proceeding, and resulted in "no appreciable saving of time or expense . . . all to the prejudice of the parties and to the inconvenience of the court"); *Almonte*, 1996 WL 768158, at *2 (denying consolidation because it "would not serve judicial economy"); *see also* 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2383 (3d ed.) (courts may deny consolidation if it "will cause delay" or "lead to confusion or prejudice in the effective management . . . of one or more of the cases").  The Court should do the same here.

It is well-settled that "***consolidation is improper when the cases sought to be consolidated are at different stages in the proceedings***."  *Almonte*, 1996 WL 768158, at *2 (emphasis added); *Schacht v. Javits*, 53 F.R.D. 321, 324–25 (S.D.N.Y. 1971) ("[P]roper judicial administration does not recommend consolidation where two actions are at such widely separate stages of preparation."); *KGK Jewelry*, 2014 WL 7333291, at *2 ("Courts have routinely denied consolidation motions where there is a stark difference in the procedural posture of the actions, finding that judicial economy would not be served by consolidating two actions at disparate stages of litigation.").

13

This is precisely the case here.  The *Walker* action was just filed on June 7, 2019, and is in the very early stages of litigation, whereas discovery is largely complete in the *Bayat* action. *See* Smith Decl. ¶¶ 26–27.  As of May 10, 2019, Accenture had produced over 3,000 pages of documents, and Bayat had produced 394 pages of documents; there are very few documents left for either party to produce.  *Id*. ¶ 27.  Accenture is prepared to move forward with depositions, but Bayat refused to make himself available for a deposition, necessitating a Court order.  *Id*. ¶¶ 20, 26.  The Court has already extended the discovery deadline in the *Bayat* action once; prior to the filing of the motion to consolidate, discovery was set to close on September 13, 2019. *Bayat* Dkt. 36 at 6.  Thus, the *Bayat* action will soon be "ripe for [] dispositive motion practice," *KGK Jewelry*, 2014 WL 7333291, at *2, while the *Walker* action has yet to really begin.  The different procedural posture of the two cases on its own makes consolidation improper and compels the denial of this motion.  *See Almonte*, 1996 WL 768158, at *2; *see also Aerotel, Ltd. v. Verizon Commc'ns Inc.*, 234 F.R.D. 64, 67 (S.D.N.Y. 2005) (denying consolidation where discovery was two months from completion in one action and discovery had not begun in the other action); *Emerson v. Sentry Life Ins. Co*., 2018 WL 4380988, at *2 (W.D. Wis. Sept. 14, 2018) (denying motion to consolidate individual plaintiff action with class action where one action was at an early stage of litigation, whereas the parties in the other had already conducted document discovery).

Moreover, consolidation would cause significant delay in the *Bayat* action and increased costs for both parties.  *See* Mot. at 11 (conceding that "consolidation would require vacating the schedule" in the *Bayat* action).  Delaying the *Bayat* action to permit motion practice, discovery, and class certification briefing in the *Walker* action could result in a delay of over a year.  And consolidation is not necessary to avoid duplicative discovery.  Discovery in the *Bayat* action

14

concerns Bayat's individual discrimination and retaliation claims; discovery relating to Walker or an alleged pattern or practice is not relevant to the *Bayat* action. Plaintiff once again puts the cart before the horse by arguing that discovery would be overlapping because he would file an amended complaint *after* consolidation. Mot. at 10–11. Indeed, Plaintiff argues that he would be "disadvantage[d]" absent consolidation, not because of efficiencies to be gained, but because it would deny him of the "pattern-or-practice method of proof" and "access to the broader discovery that will be available in the class action." *Id*. While Bayat may regret failing to amend his complaint before the deadline, a motion to consolidate is not the proper vehicle to expand the scope of discovery available to him in his individual case. *See Lowry v. Eastman Kodak Co*., 14 F. App'x 27, 30 (2d Cir. 2001) ("[D]istrict court scheduling orders 'shall not be modified except upon a showing of good cause.'" (quoting Fed. R. Civ. P 16(b))).

Plaintiff's argument that consolidation would "lessen the impact of the resource disparities" between him, a *pro se* plaintiff, and Accenture is misplaced and finds no support in the case law. This is not a factor courts consider in deciding whether to consolidate two actions, as evidenced by Bayat's failure to cite any on-point case law. *See* Mot. at 11. Further, in the primary case that Plaintiff cites in support of his efficiency arguments—*Flanagan v. New York City Department of Education*—the court determined that consolidation was appropriate because of the "numerous" "identical" facts in both actions, which prompted "defendants [to] *recognize the efficiency* of consolidat[ion]." 2016 WL 4198201 at *3 (emphasis added). That is not the case here. Accenture firmly disputes that *any* efficiencies would be gained by consolidating the *Bayat* and *Walker* actions.

In sum, the delay and waste of judicial resources that consolidation would cause, without providing *any benefit* to Accenture, requires that consolidation be rejected. *See Almonte*, 1996

15

WL 768158, at *2 ("The fact that the cases are at such widely divergent stages [] defeats judicial economy.  There is no benefit to consolidating discovery because discovery in Action 1 is completed."); *In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 1834351, at *2 (S.D.N.Y. June 18, 2009) (denying consolidation, even though common issues of law and fact existed, because "consolidation would lead to a long delay").

### C.       Consolidation Will Unduly Prejudice Accenture

Consolidation "may not be granted where it may result in prejudice to one or more of the parties."  *Bascom Launder Corp v. Telecoin Corp*, 15 F.R.D. 277, 277 (S.D.N.Y. 1953); *Tucker*, 73 F.R.D. at 317 ("Where [] prejudice will result, it is inappropriate for a court to order consolidation.").  This is true even if the Court finds that there are common questions of law or fact.  *See Almonte*, 1996 WL 768158, at *2 ("[D]espite possible common questions of law or fact, where confusion and prejudice will result, it is inappropriate for a court to order consolidation." (internal quotation marks and citation omitted)); *Schacht*, 53 F.R.D. at 324 ("While there may be questions of law common to both actions, this does not justify consolidation, particularly where, as here, [the] parties would be prejudiced").

If the *Walker* and *Bayat* actions were to be consolidated, Accenture would be unduly prejudiced by the resulting delay, as explained *supra*, Section I(B).  *See, e.g.*, *KGK Jewelry*, 2014 WL 7333291, at *2 (denying consolidation because it "would prejudice the [defendants] by forcing them to delay moving forward with a case that they stand ready to litigate to conclusion").  Accenture will also be prejudiced if the Court grants the motion and allows the eleventh-hour conversion of the *Bayat* action into a putative class action, as discussed further *infra*.  Tellingly, Plaintiff's motion does not even address the prejudice to Accenture that would result from consolidation, thereby waiving the argument that Accenture will not be significantly prejudiced.

*      *      *

For all of these reasons, consolidation of the *Walker* and *Bayat* actions is improper under Rule 42(a) and must be denied.

## II.   CONSOLIDATION IS BEING SOUGHT FOR AN IMPROPER PURPOSE

Courts must also deny consolidation where a party seeks it for an improper purpose, which is exactly what Plaintiff is doing here.  Indeed, "[c]onsolidation [is] not [ ] proper if a party thereby seeks to circumvent the rules regarding . . . deadlines for amendment as of right." 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2382 (3d ed.).  Plaintiff's motion for consolidation is nothing more than a poorly veiled attempt to circumvent the deadline for amending pleadings in the *Bayat* action—which has long since passed—and to belatedly convert the *Bayat* action into a class action.  Granting Plaintiff's motion to consolidate, and thereby rewarding this improper gamesmanship, would not only unduly prejudice Accenture, but would set a dangerous precedent.  For this reason, the Court should deny the motion to consolidate.  *See Hubert*, 2018 WL 1582511, at *4 (denying consolidation where filing of second action was an attempt to circumvent dismissal in first case).

There are numerous deficiencies with Walker's case, which support dismissal of his complaint rather than consolidation.  These clear deficiencies, when coupled with Plaintiff's stated intent to use consolidation to amend the claims in the *Bayat* action, demonstrate that consolidation is being sought for an improper purpose.

*First*, Walker's claims have no ties to Connecticut and certain of his claims are barred because he signed a release.  Walker is a California resident who worked for Accenture in California.  Amick Decl. ¶ 7.  His Complaint omits any reference to alleged discriminatory acts occurring in Connecticut.  His Complaint also conspicuously omits that on June 6, 2015, in exchange for monetary compensation, Walker signed a separation agreement containing a

17

general release.  *See* Amick Decl. Ex. A at 2.  That release provides, in relevant part, that Walker waives any "[c]laims of discrimination under the common law or any federal or state statute (including, without limitation, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act, all as amended)."  *Id*.

Releases such as this are commonplace in employment separation agreements and are widely upheld in the Second Circuit.  *See, e.g.*, *Malaney v. Elal Israel Airlines*, 331 F. App'x 772, 774–75 (2d Cir. 2009).  Because Walker signed an agreement releasing Accenture from "any Claims related to [his] employment," including "Claims of discrimination," his discrimination claims under Section 1981 (and Title VII) are barred.  *See Sutherland v. Touhey*, 182 F.3d 901 (2d Cir. 1999) (table) (release barred employment-related claims); *Malaney*, 331 F. App'x at 774–75 (release barred discrimination action against employer); *Rajasekhar v. Envtl. Data Res., Inc*., 2019 WL 2743579, at *2 (D. Conn. July 1, 2019) (granting motion to dismiss because plaintiff had released employer from any claims arising from plaintiff's employment).

*Second*, certain of Walker's claims are time-barred.  The statute of limitations for claims under 42 U.S.C. § 1981 is 4 years.  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).  But Walker's employment was terminated on June 2, 2015 (Amick Decl. ¶ 5), and he alleges that he was denied promotions prior to June 2015, thus making those claims untimely when his Complaint was filed on June 7, 2019.[6]

---

[6] Walker's Title VII claims, which he indicates will be asserted in the future, would fare no better.  Under Title VII, a plaintiff must file an administrative claim with the EEOC within 300 days of the retaliatory conduct at issue.  *See Carter v. N.Y.C. Dep't of Corr.*, 7 F. App'x 99, 102–03 (2d Cir. 2001) (affirming dismissal where plaintiff would be unable to establish its Title VII retaliation claim based solely on the 1996 disciplinary charges that were not time-barred).  "The 300 day limit functions as a statute of limitations, precluding consideration of events that occurred more than 300 days prior to filing an administrative complaint." *Id.* at 713.  The Court may therefore only consider events that occurred after September 20, 2018—300 days prior to Walker's EEOC charge, and any claims based on earlier events would be time-barred.

*Third*, Walker's claim alleging violations of 42 U.S.C. § 1981 cannot withstand a motion to dismiss.  His Complaint fails to allege any facts supporting a plausible inference that Accenture acted with discriminatory motivation.  Statistics alone are insufficient to plausibly allege that Walker was the victim of race discrimination.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 356 (2011) (statistical information insufficient to raise an inference of a company-wide policy of discrimination); *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (affirming dismissal of Section 1981 claim where plaintiff's statistical evidence was insufficient to support its claim).  Walker's allegations of discrimination are wholly conclusory, particularly when it comes to his claims that Accenture failed to hire him because of his race.  The Complaint omits any factual allegations connecting Walker's failure to be hired for a specific position to his race, as opposed to other reasons.  *See, e.g.*, *DeSouza v. Taiman*, 2017 WL 3444672, at *5 (D. Conn. Aug. 10, 2017) (dismissing Section 1981 claim where "complaint does not allege any facts to support even a 'minimal inference of discriminatory motivation,' relying instead solely on conclusory allegations").  Discrimination is therefore no more plausible than other, non-discriminatory reasons for not being hired such as lack of qualifications for the position or his history of performance issues during his prior tenure at Accenture.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (finding a motion to dismiss should be granted where plaintiffs fail to proffer "enough facts to state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face" in order to survive dismissal).  Walker's Section 1981 claim thus cannot survive dismissal.

*        *        *

The myriad deficiencies in Walker's case underscore that the *Walker* action was filed for the sole purpose of circumventing the Court's scheduling order and converting the *Bayat* action to a class action after the required deadline to do so.  The Court should deny the motion to consolidate on the basis that consolidation is being sought for an improper purpose.

## III.   CONSOLIDATION SHOULD BE DENIED BECAUSE BAYAT IS NOT AN ADEQUATE CLASS REPRESENTATIVE

To justify a departure from the "usual rule that litigation is conducted by and on behalf of the individual named parties only," *Dukes*, 564 U.S. at 348, a plaintiff must show, among other things, that he "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  A class representative is not "adequate" unless he is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quoting *East Tx. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  Class representatives are fiduciaries, and absent class members are "dependent upon [class representatives'] diligence, wisdom and integrity."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549 (1949).  The weighty responsibility of class representation has compelled courts to scrutinize and reject proposed class representatives where there was even the "possibility of inadequacy and the appearance of impropriety."  *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 157 (S.D.N.Y. 2010).

Bayat has not—and cannot—prove that he "will fairly and adequately protect the interests" of a class.  Fed. R. Civ. P. 23(a)(4).  To the contrary, the record reveals that Bayat has been unable to successfully comply with his basic obligations as a litigant or otherwise diligently prosecute his claims.  "One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted."  *Norman*

*v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (finding plaintiff not an adequate class representative where he was uncooperative during his deposition); *see also Hochberg v. Howlett*, 1994 WL 9677, *2 (S.D.N.Y. Jan. 10, 1994) (finding plaintiff not adequate class representative where he failed to "fully to participate in document and deposition discovery" and defendant twice filed motions for sanctions).  Here, Bayat has been nonresponsive and uncooperative, has failed to meet deadlines, has not fulfilled his discovery obligations, and had to be ordered by the Court to make himself available for a deposition.  Smith Decl. ¶¶ 20–26.  Indeed, Bayat's conduct necessitated an extension of the discovery deadline.  *See Bayat* Dkt. 36.  This blatant disregard for the necessary steps to litigate his claims and wholesale abdication of his responsibilities as a litigant are not the qualities of a proper class representative.

Moreover, while Bayat did file a complaint with the EEOC for his own individual claims, Bayat did not exhaust all of the class claims before the EEOC, which separately renders him an inadequate class representative.  *Cf. Burke v. Also Cornerstone*, 2008 WL 3891737, at *2 (D. Conn. July 16, 2008) (recommending dismissal where plaintiff failed to exhaust administrative remedies before bringing suit by filing a charge of discrimination with the federal EEOC or the Connecticut Commission on Human Rights and Opportunities ("CCHRO")).

Bayat is also an inadequate class representative because his individual age discrimination and retaliation claims against Accenture are not shared by the putative class.  "Adequacy is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see also Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 897 (2d Cir. 2008).  When a "putative class

representative is subject to unique defenses which threaten to become the focus of the litigation," he cannot serve as a class representative because of the "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated in part on other grounds*, *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *see also Falcon*, 304 F. App'x at 897.  Additionally, courts have held that "claims of retaliatory treatment, which require proof of highly individualized facts, generally do not present suitable issues for class actions." *Lomotey v. Conn. Dept. of Transp.*, 2012 WL 642744, at *3 (D. Conn. Feb. 28, 2012) (citation omitted) (finding proposed class representative inadequate where he filed prior lawsuits substantially similar to the new class action with unique retaliation claims).

Here, the absent class members face significant risk that Bayat, who has been litigating his case *pro se* since September 2018, will be more invested in his individual claims than the class claims he would be overseeing if consolidation is granted.  Bayat's assertion of a retaliation claim, which is not susceptible to class treatment, similarly renders him inadequate.

Moreover, plaintiffs are deemed inadequate where they "[p]resumably . . . ha[ve] a greater financial interest in [their] individual lawsuit[s]," in which they seek to collect, among other things, front and back pay, punitive damages, and non-monetary damages for severe emotional distress. *Levias v. Pac. Mar. Ass'n*, 2010 WL 358499, at *6 (W.D. Wash. Jan. 25, 2010) (holding plaintiff inadequate class representative due to actual and potential conflicts with the putative class where, as here, he had separate pending claims against other named parties); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 678–79 (N.D. Ohio 1995) (finding named plaintiffs inadequate and noting that "absent class members are at great risk of being sold out" to achieve a greater recovery in the separate action).  Bayat, who is suing for "damages, lost wages, back pay,

front damages, damages for Title VII violations, past and future impairment of power to earn money, adverse treatment and emotional distress, . . . [and c]ompensatory damages, in an amount to be determined at trial but not less than 14 million dollars" stands to gain far more from his individual lawsuit and as such is not a proper class representative.  *Bayat* Compl. at 35.

For these reasons, Bayat should not be permitted to become a class representative through consolidation.

## CONCLUSION

For the reasons set forth above, Accenture respectfully requests that the Court deny Plaintiff's motion to consolidate the *Walker* and *Bayat* actions.

Dated: August 2, 2019                                DEFENDANT ACCENTURE LLP

By:

B. Aubrey Smith (admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-4758
Fax: (212) 294-4700
BASmith@winston.com

Its Attorneys

Daniel J. Fazio (admitted *pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
DFazio@winston.com